NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231108-U

NO. 4-23-1108

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 8, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JORDAN M. KELSON, | ) | No. 23CF1015 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Kording, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: By granting the State's petition to deny pretrial release, the circuit court did not
abuse its discretion.

¶ 2    After defendant, Jordan M. Kelson, was arrested for domestic battery, the State

charged him with that offense and petitioned to keep him in pretrial detention. After a hearing, the

circuit court of McLean County granted the petition. Defendant appeals. We find no abuse of

discretion in the denial of pretrial release. Therefore, we affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4    On October 3, 2023, defendant was charged by information. The same day, a

motion by the State to deny pretrial detention and a detention order were filed.

¶ 5    In the information, the State charged defendant with one count of domestic battery,

a subsequent offense. See 720 ILCS 5/12-3.2(a)(1) (West 2022). The information alleged that, on

October 1, 2023, he injured a family member, Tyler Kelson (Tyler), by striking her with a cup. The information added that previously, in Crow Wing County, Minnesota, district court case No. 18-CR-15-3633, defendant was convicted of a substantially similar offense, domestic assault, and that, consequently, the present offense was a Class 4 felony. See *id.* § 12-3.2(b). Having been arrested on the present charge, defendant was confined in the McLean County jail.

¶ 6 Pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act, the State petitioned for the denial of pretrial release. The petition claimed that, under section 110-6.1(a)(4) of the Code (725 ILCS 5/110-6.1(a)(4) (West 2022)), defendant was eligible for pretrial detention. For two reasons, according to the petition, granting him pretrial release would be hazardous. First, under the "specific articulable facts of the case," the pretrial release of defendant would "pose[ ] a real and present threat to the safety of any person or persons or the community." See *id.* § 110-6.1(e)(2). Second, the pretrial release of defendant would "pose[ ] a real and present threat to the safety of a victim of the alleged offense[,] and denial of pretrial release [was] necessary to prevent fulfillment of the threat upon which the charge is based." See *id.* § 110-6.1(a)(2).

¶ 7 On October 3, 2023, the parties appeared for a hearing on the State's petition. The hearing began with the question of whether there was probable cause to believe that defendant had committed the charged offense of domestic battery. The prosecutor claimed that there was probable cause. In support of that claim, he made the following representations. Defendant and Tyler were married, and they lived together. On October 1, 2023, in their residence, they had an argument in which defendant asserted that Tyler's pregnancy was by another man. As Tyler was sitting on a chair in their living room, defendant threw a cup of apple juice and ice at her, and the

- 2 -

cup struck her in the face, inflicting a cut on her eyebrow. (Later, a police officer saw a fresh cut on Tyler's eyebrow.) The next morning, defendant was driving to work, and Tyler was in the car with him. During this drive, he almost got into a vehicular accident three times. Tyler demanded that he let her out of the car, but he refused to let her out. After defendant arrived at work, Tyler called the police, and police officers went to defendant's place of employment to speak with him. In his conversation with the police, defendant denied throwing a cup at Tyler. He admitted, however, that, during the car drive, he told Tyler, " 'Agree to tell everyone the truth, or I'll kill us both,' " and that he warned her he would " 'drive the car off a cliff.' " Defendant had a previous conviction of domestic assault in Minnesota, in Crow Wing County district court case No. 18-CR-15-3633. The prosecutor, however, did not know if Tyler was the victim in the Minnesota case. On the basis of this factual recitation, the circuit court found probable cause to detain defendant.

¶ 8        The next issue was whether defendant should be denied pretrial release on the ground of dangerousness, as the State urged in its petition. The attorneys agreed that, under section 110-6.1(a)(4) of the Code (*id.* § 110-6.1(a)(4)), the charged offense was a detention-eligible offense. The attorneys said they were ready to proceed with an immediate detention hearing. Tyler had received notice of the hearing, but she did not appear. The circuit court allowed the parties to proceed by way of proffer. The prosecutor proffered the probable-cause statement he had just made to the court. In addition, the prosecutor informed the court that the day before, on October 2, 2023, Tyler obtained an emergency order of protection against defendant and that on October 20, 2023, a hearing would be held to decide whether a plenary order of protection should be issued against defendant.

¶ 9        Defense counsel proffered that defendant had a local residence in Bloomington, Illinois, and that defendant could live in Bloomington and not be near Tyler. Also, defense counsel

informed the court that defendant and Tyler had two children together, for whom defendant paid child support out of the earnings from his job, and that Tyler's earnings were insufficient to support herself and the children. According to defense counsel, defendant was willing to abide by even the strictest of pretrial release conditions, including an ankle monitor.

¶ 10    The parties had no objection to the circuit court's consideration of a public safety assessment, which contained the following conclusions. On a "New Criminal Activity Scale" of one to six, defendant scored four. On a "Failure to Appear" scale of one to six, he scored two. The "VIOLENCE FLAG [was] present." If defendant were released, there should be "MAXIMUM CONDITIONS."

¶ 11    At the conclusion of the evidence, the prosecutor argued that because defendant had inflicted bodily harm on Tyler in the present case, because he had a history of domestic violence, and because he made death threats in the car and had reinforced the threats by almost getting into a vehicle accident three times, Tyler would be safe only if defendant were kept in pretrial detention.

¶ 12    Defense counsel disputed that pretrial detention was necessary. He represented that defendant would submit to an ankle monitor, a secure continuous remote alcohol monitoring (SCRAM) device if alcohol were a problem (although, so early in the case, defense counsel did not know yet if defendant had a drinking problem), and even house arrest. Defendant was willing to submit to any condition of pretrial release so that he would be allowed to continue working and supporting his family members—even if he were forbidden to see them and were required to communicate with them through an intermediary.

¶ 13    After the attorneys made their arguments, the circuit court found that defendant was charged with a detention-eligible offense and that he posed a real and present threat to Tyler. The

court said it had taken into consideration defendant's gainful employment and the family's dependence on his income. In the court's view, however, that financial consideration was "counterbalanced" by the risk that defendant would harm Tyler again. The court noted the severity and duration of the present incident (a two-day altercation), and the court was "extra concerned" about defendant's prior conviction of domestic assault. Given defendant's apparent "impulse control" problem, the gravity of his threats, and his suicidal ideation, the court did not think it would be possible to come up with conditions of release that would adequately mitigate the risk to Tyler. The court perceived a "high likelihood that defendant would be obsessed" and that he would not comply with conditions of pretrial release, especially considering that the two children would make it difficult for him and Tyler to stay apart. Therefore, the court granted the State's petition to deny pretrial release.

¶ 14 In its detention order, entered on October 3, 2023, the circuit court found that defendant "poses a real and significant danger to *** Tyler Kelson." The court found that defendant was "unlikely to comply with some or all pretrial release conditions that could be imposed in this case." The court found that "[n]o combination of available pretrial release conditions would adequately mitigate the high risk of individual/community threats and/or [defendant's] failure to appear for court hearings in this case." Next to "Other," the court wrote,

> "[Defendant] threatened to kill himself and Tyler Kelson. [Defendant] threw [an] object at Tyler Kelson and caused injury. [Defendant] is potentially upset with [the] alleged victim over paternity issues. [Defendant] would not allow Tyler Kelson out of [the] automobile after driving dangerously to frighten [the] victim and threatening to crash [the] automobile."

The order also noted defendant's "prior domestic violence conviction." Therefore, the court ordered indefinite pretrial detention, pending trial.

¶ 15        This appeal followed.

¶ 16                            II. ANALYSIS

¶ 17        Appellate defense counsel has notified us that she will not file a memorandum. We turn, then, to the notice of appeal. In the notice-of-appeal form, under the heading "Denial or Revocation of Pretrial Release," defendant has checked three boxes.

¶ 18        The first box he has checked corresponds to the preprinted language, "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." See *id.* § 110-6.1(a)(1)-(7), (e)(2). The explanation lines in this context are left blank, leaving us only with the assertion made by the preprinted language. Given the record before us, this bare assertion is not rationally persuasive. We are unconvinced that the circuit court abused its discretion by finding that the State had met its burden of proof on this issue. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. We cannot say it is arbitrary, fanciful, or unreasonable to conclude that defendant poses a real and present threat to Tyler's safety, considering that he injured her by throwing a cup at her and considering that, during the car ride the next day, he threatened to kill her and himself and dramatized that threat by almost getting into a vehicular accident three times. See *id.* The court could reasonably regard defendant's fury as more than fleeting. Arguably, it would have been unwise not to take defendant's threat as seriously as defendant evidently intended Tyler to take it.

¶ 19        Second, in the notice-of-appeal form, defendant has checked the box next to the preprinted language "The State has failed to meet its burden of proving by clear and convincing

evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight." See 725 ILCS 5/110-6.1(e)(3) (West 2022). The explanation lines corresponding to this assertion are left blank. Likewise, this bare assertion fails to persuade us that the circuit court abused its discretion. The effectiveness of pretrial release conditions depends on the defendant's deterrability, specifically, the extent to which the defendant would be deterred by the potential penalties for violating the conditions. A reasonable person could take the view that because defendant threatened to kill not only Tyler but also himself and because defendant lent credibility to that threat by almost getting into a vehicular accident three times during the drive to work, defendant likely would feel undeterred by the prospect of merely incurring legal sanctions.

¶ 20       Third, defendant has checked the box next to the preprinted language, "The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." This preprinted language is irrelevant because it expresses what the State would have to prove for the revocation of pretrial release, not the denial of pretrial release. See *id.* § 6(a). Nevertheless, under this preprinted language, defendant has provided the following explanation:

> "Further, the Court erred in as the totality of the circumstances and the limited presentation of proffered testimony, and there were less restrictive means that could have been ordered by the Court to mitigate any suspected threat to a specific person or the community, such as the Defendant being placed on an ankle monitor, SCRAM, devise and placed on pretrial supervision wherein the Defendant could

undergo assessments for substance abuse or mental health and abide by any treatment, and making conclusion of law not reasonably inferred by the evidence presented during the hearing."

¶ 21 This explanation provides examples of the "condition or combination of conditions" that, allegedly, could "mitigate the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(4) (West 2022). As we have discussed, however, the circuit court could reasonably regard these suggested conditions as inadequate because, as the court put it, there was a "high likelihood that defendant would be obsessed" and because, in the light of his suicidal ideation, he would be undeterrable. Arguably, a person who has threatened to kill the victim and himself at the same time has, in his own thinking, nothing left to lose, and legal penalties would be, for him, meaningless.

¶ 22 III. CONCLUSION

¶ 23 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 24 Affirmed.